**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| JESSICA LOEWEN, individually, and on behalf of all others similarly situated, | § § § § | |
| *Plaintiff* | § § | |
| v. | § § | No. _____ |
| AUTOZONE, INC., | § § | CLASS ACTION |
| *Defendant* | § § | |

---

## COMPLAINT

---

COMES NOW Plaintiff, Jessica Loewen ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through counsel, and upon information and belief states and alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for declaratory relief and recovery of benefits due under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, individually, and on behalf of all others similarly situated, against her former employer, AutoZone, Inc. ("Defendant").

2. Rather than working with a store manager, who enjoyed exemplary performance on the job for over four years, to transition to a part-time role due to increasing family demands, Defendant AutoZone summarily terminated Plaintiff's employment.

1

3.    To add insult to injury, Defendant retroactively terminated Plaintiff's health insurance benefits, to be effective the day prior, and denied Plaintiff insurance coverage for medical treatment, after accepting Plaintiff's premium payment for the entire coverage period.

4.    To provide redress for Defendant's reprehensible conduct and recover the benefits she is due, Plaintiff was forced to retain counsel and bring the instant action, both on behalf of herself and all other AutoZone plan participants who are owed benefits.

## PARTIES

5.    Plaintiff is a resident and citizen of Ottawa, Kansas, where she intends to remain.

6.    Defendant AutoZone, Inc., is a Nevada corporation with its principal place of business at 123 S. Front St., Memphis, TN 38103, and may be served with process through its registered agent, CT Corporation System, 300 Montvue Road, Knoxville, TN 37919.

## JURISDICTION & VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

8. This Court has personal jurisdiction over Defendant because it transacts business in this district, resides in this district, and is otherwise at home in this district and the State of Tennessee.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant transacts business in this district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this district, and pursuant to 29 U.S.C. § 1132(e)(2) because Defendant resides or can be found in this district.

## PLAINTIFF'S EXPERIENCE

10. On April 15, 2025, Plaintiff opened AutoZone store number 1632 in Ottawa, Kansas, at approximately 7:00 a.m. and began performing her regular duties as Store Manager.

11. Plaintiff had been the store manager for approximately four years and had close relationships with her coworkers and employees.

12. At approximately 9:43 a.m., Plaintiff sent an email to her direct supervisor, Shane Thomas, stating that, after careful consideration, she wished to step down from her position as Store Manager and transition to a part-time role with AutoZone because she needed to devote additional time to helping her aging mother at home and she was transitioning to a full-time role in another job but wanted to remain with AutoZone part time.

13.    At approximately 12:30 p.m. that same day, while Plaintiff was on duty at the store, Mr. Thomas arrived and terminated Plaintiff's employment in person. Plaintiff performed work for Defendant on April 15, 2025.

14.    On May 7, 2025, Mr. Thomas informed Plaintiff via text message that she had been coded as "rehireable" in Defendant's system.

15.    Despite Plaintiff's termination occurring on April 15, 2025, Defendant processed her termination as effective April 14, 2025.

16.    During her employment, Plaintiff participated in and received benefits under the AutoZone, Inc. Welfare Benefit Plan ("the Plan"), including medical coverage.

17.    The employee-paid portion of the premium for medical and hospital coverage was deducted from Plaintiff's paycheck on a per-pay-period basis.

18.    For the pay period from March 30, 2025, through April 12, 2025, Plaintiff paid $97.42 for medical coverage and $4.61 for hospital coverage.

19.    For the pay period from April 13, 2025, through April 26, 2025, Plaintiff paid $97.42 for medical coverage and $4.61 for hospital coverage through her final paycheck, dated May 2, 2025.

20.    Notwithstanding Plaintiff's payment for coverage through April 26, 2025, Defendant terminated Plaintiff's benefits under the Plan, including her health insurance, effective April 14, 2025.

21.    Plaintiff paid the full premium for health insurance coverage under the Plan for the pay period April 13, 2025, to April 26, 2025.

22.    Defendant did not refund any portion of the premiums deducted for the pay period from April 13, 2025, through April 26, 2025.

23.    When asked why her health insurance coverage had been terminated, despite her premium being paid, Defendant responded, "AutoZone does not prorate deductions."

24.    Thus, Plaintiff paid for – but did not receive – at least eleven days of health insurance coverage.

25.    Prior to her termination, Plaintiff had preplanned medical procedures scheduled for April 23, 2025, and April 25, 2025.

26.    Her supervisor, Mr. Thomas, was aware of the planned procedures.

27.    Plaintiff received the surgeries on April 23, 2025, and April 25, 2025, respectively, and follow-up care on April 28, 2025.

28.    At the time of her medical treatments, Plaintiff had no notice that her insurance coverage had been terminated effective April 14, 2025.

29.    When Plaintiff received her surgeries and follow-up care, claims were submitted to her health insurance, United Healthcare, for the services rendered on April 23, April 25, and April 28, 2025.

30.    Those claims were denied on the ground that Plaintiff's coverage had been terminated effective April 14, 2025, the day before she was summarily terminated.

31.    Plaintiff's medical expenses for the surgeries on April 23, 2025, and April 25, 2025, and follow-up care on April 28, 2025, exceed $35,000.00.

32.     After learning that her insurance had been terminated, Plaintiff contacted Debra Gomez, a Regional Human Resources Manager, and asked for an explanation. Plaintiff questioned Ms. Gomez about her benefits to confirm she was covered. Ms. Gomez did not respond.

33.     On May 22, 2025, after learning that her claims had been denied, Plaintiff contacted Mr. Thomas, seeking an explanation as to why her medical bills were not being paid despite her payroll deductions for coverage.  Mr. Thomas replied that he did not know and he would need to ask "Debbie," believed to be Ms. Gomez.

34.     Plaintiff replied, asking Mr. Thomas to do so, and repeating that she paid her premiums and expected to have insurance coverage through the date of her paid premiums.

35.     On May 23, 2025, Plaintiff communicated directly with Ms. Gomez, asking when her insurance was terminated, and again explaining that she had paid her premiums.  Ms. Gomez responded that she would need to "reach out to Benefits to find out."

36.     Later that day, Evelyn Morgan, a Senior Benefits Specialist, communicated internally with Mr. Thomas and Ms. Gomez, confirming that Plaintiff's coverage termination date was April 14, 2025, and acknowledging that Plaintiff had a payroll deduction on May 2, 2025 for pay period from April 13, 2025, through April 26, 2025, but noting that "AutoZone does not prorate deductions."

37.    Ms. Gomez sent a copy of this communication to Plaintiff, and Plaintiff again requested that her insurance be reinstated and that her procedures be covered under the Plan.

38.    Defendant did not indicate that coverage could be reinstated, that the termination date was subject to review, or that the decision was provisional pending appeal. Instead, Defendant reaffirmed its position that Plaintiff's coverage had ended notwithstanding her payroll deductions and declared it had a widespread policy of not prorating deductions and refusing to fund benefits when a former employee has paid the premiums.

39.    Further, Defendant did not provide any avenue through which Plaintiff could challenge the determination that her coverage had been terminated, despite the fact that she had paid her premiums.

40.    Under these circumstances, any further administrative appeal would have been futile because Defendant had already taken a firm and final position that Plaintiff was not covered during the relevant period and that payroll deductions would not alter that determination.

## ADDITIONAL FACTUAL ALLEGATIONS

41.    At all times relevant hereto, Plaintiff and Class Members were employees of Defendant and participants in the AutoZone, Inc. Welfare Benefit Plan ("the Plan").

42.    The Plan is an "employee welfare benefit plan" as defined by ERISA.

43. AutoZone, Inc., serves as both the Plan Sponsor and Plan Administrator for the Plan.

44. United Healthcare Services, Inc., serves as the Claims Administrator for the Plan.

45. As both the Plan Sponsor and Plan Administrator, Defendant AutoZone, Inc. owed fiduciary duties to Plaintiff and Class Members.

46. The medical benefits provided under the Plan are funded by AutoZone, Inc., which has sole responsibility for the design and funding of the Plan.

## CLASS ALLEGATIONS

47. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and the following proposed class ("Class"):

> All former employees of Defendant who made full premium payments but were denied benefits under the Plan for the remainder of the pay period in which their employment was terminated at any time between six years from the date this action is filed and the date of judgment (the "Class Period").

48. Excluded from the Class is the Judge to whom the case is assigned, and the Judge's staff.

49. This action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23.

50. **Numerosity**. Defendant is a nationwide retailer of auto parts, employing thousands of people across the United States. Given Defendant's widespread practice of refusing to prorate deductions in paychecks for the pay periods in which an employee's employment is terminated, there are hundreds, if not

thousands, of putative class members. As a result, the members of the Class are so numerous that their individual joinder in this action is impracticable.

51.    **Commonality**.  There are questions of fact and law that are common to Plaintiff and all the members of the Class, including, but not limited to the following:

a.  Whether Defendant is required to fund benefits under the Plan for employees who paid health insurance premiums in full and whose employment is terminated; and

b.  Whether a terminated employee is entitled to recover health insurance benefits after employment is terminated when the employee paid the premiums for insurance coverage in full.

52.    **Typicality**.  Plaintiff, who is a member of the Class, has claims that are typical of all members of the Class.  Plaintiff's claims and the Class members' claims arise out of the same uniform course of conduct by Defendant and under the same legal theories.

53.    **Adequacy of Representation**.  Plaintiff will fairly and adequately represent the interests of the Class members.  Plaintiff has no conflict of interest nor any interests that are different from the other members of the Class.  Plaintiff has retained competent counsel experienced in class actions and other complex litigation, including class actions brought under ERISA.

54.    **Potential Risks and Effects of Separate Actions**.  The prosecution of separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that

would establish incompatible standards of conduct for the party opposing the Class. Individual Class member adjudications would also be dispositive of the interests of the other Class members, not party to the individual adjudications, which would substantially impair or impede their ability to protect their interests.

55. **Relief to Class as Whole**. Defendant has acted or refused to act on grounds that apply generally to the class, so that final declaratory relief is appropriate respecting the Class as a whole. Defendants have acted in a manner generally applicable to the Class by uniformly subjecting them to the violations of ERISA described above. Accordingly, injunctive relief, legal and equitable monetary relief, and declaratory relief are appropriate with respect to the Class as a whole.

56. **Predominance**. Common questions of law and fact predominate over questions affecting only individual Class members. The Court and the parties will spend the vast majority of their time working to resolve these common issues. In fact, the only individual issues of significance will be the exact amount of damages each Class member will recover, the calculation of which will ultimately be a ministerial function which does not bar Class certification.

57. **Superiority**. A class action is superior to all other feasible alternatives for the resolution of this matter. The vast majority, if not all, of the Class members are unaware of Defendants' unlawful conduct, such that they will never bring suit individually. Furthermore, even if they were aware of the claims they have against Defendants, the individual claims of most Class members would be too small to economically justify individual litigation. Finally, individual litigation of multiple

cases would be highly inefficient, a gross waste of the Court's and the parties' resources and could lead to inconsistent results that would be contrary to the interests of justice.

58.    **Manageability**.  This case is well-suited for class action treatment and can be easily managed as such because evidence of both liability and damages can be adduced and presented on a Class-wide basis while the allocation and distribution of damages to Class members will be essentially a ministerial function.

59.    Plaintiff's counsel will fairly and adequately represent the interests of the Class and are best able to represent the interests of the Class under Federal Rule of Civil Procedure 23(g).  Moreover, treating this case as a class action is superior to proceeding on an individual basis, and there will be no difficulty in managing this case as a class action.

60.    Therefore, this action should be certified as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2), and/or (b)(3).

### CAUSES OF ACTION

#### COUNT I: RECOVERY OF BENEFITS DUE

61.    Plaintiff hereby incorporates by reference all foregoing allegations as though fully set forth herein.

62.    At all times relevant hereto, Plaintiff was a participant in the Plan.

63.    The Plan is an employee welfare benefit plan subject to, and governed by, ERISA.

11

64.    Defendant, as both the Plan Sponsor and Plan Administrator, is a fiduciary in connection with the Plan, and it owes fiduciary duties to the Plan and its participants.

65.    Defendant has sole responsibility for the design and funding of the Plan.

66.    Plaintiff paid the required premium to receive medical benefits under the Plan for the period from April 13, 2025, to April 26, 2025.

67.    Plaintiff was terminated on April 15, 2025, and Defendant retroactively terminated her benefits, effective April 14, 2025.

68.    Defendant refused, and continues to refuse, to fund the medical benefits provided under the Plan, for which Plaintiff paid the required premium.

69.    Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to benefits in an amount in excess of $35,000.00.

70.    As a result of Defendant's failure to fund the insurance benefits due to Plaintiff under the Plan, Plaintiff has been forced to retain counsel to prosecute this action. Pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), Plaintiff may recover reasonable attorney's fees and costs of action.

## COUNT II: DECLARATORY RELIEF

71.    Plaintiff hereby incorporates by reference all foregoing allegations as though fully set forth herein.

72.    On information and belief, Defendant disputes Plaintiff's contentions as stated above regarding its obligation to fund medical benefits for which Plaintiff paid

the required premium. Therefore, an actual and justiciable controversy exists between Plaintiff and Defendant concerning the foregoing matter.

73.    Plaintiff therefore seeks a judicial declaration as to Defendant's duties under the Plan, confirming Plaintiff's contentions above are correct and confirming Defendant must fund medical benefits during all periods in which the required premium has been paid by a Plan participant. A declaration is necessary at this time in order that the dispute between the parties may be resolved and that the parties may be aware of their respective rights and obligations.

## COUNT III: BREACH OF CONTRACT

74.    Plaintiff hereby incorporates by reference all foregoing allegations as though fully set forth herein.

75.    Defendant has breached its duties under the Plan by refusing to fund health insurance benefits for Plaintiff after she paid for the benefits.

76.    Defendant's breach proximately caused Plaintiff damages in excess of $35,000 of unpaid medical claims.

77.    Plaintiff is also entitled to recover her attorney's fees reasonably incurred to obtain the benefits of insurance that were wrongfully withheld by Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter a judgment in her favor against Defendant on all claims and award the following relief:

A.      A determination that this action may proceed as a class action, pursuant to Fed. R. Civ. P. 23(a) and (b);

B.      Designation of Plaintiff as Class Representative and designation of Plaintiff's counsel as Class Counsel;

C.      A declaration that Plaintiff is owed benefits under the Plan and Defendant owes insurance benefits to plan Participants during the entire coverage period for which participants have made the requisite premium payments;

D.      Recovery of benefits due and owing to Plaintiff;

E.      Attorney's fees;

F.      Pre- and post-judgment interest at the maximum rate allowed by law; and

G.      All other relief, at law or in equity, to which Plaintiff and Class Members are justly entitled.

Dated: April 1, 2026                    Respectfully submitted,

                                        */s/ J. Gerard Stranch, IV*
                                        J. Gerard Stranch, IV (TN BPR 23045)
                                        Michael C. Tackeff (TN BPR 036953)
                                        John C. Roberts (TN BPR 042673)
                                        STRANCH, JENNINGS & GARVEY, PLLC
                                        The Freedom Center
                                        223 Rosa L. Parks Ave., Suite 200

14

Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
jroberts@stranchlaw.com

Richard S. Fisk*
BEAM-WARD, KRUSE, WILSON & FLETES, LLC
8645 College Blvd. Suite 250
Overland Park, KS 66210
Tel: (913) 339-6888
rfisk@bkwflaw.com

*Counsel for Plaintiff
and the Proposed Class*

\* *Pro Hac Vice* application forthcoming

15